## SHARP et al. v. SEVENTH JUDICIAL DISTRICT COURT OF STATE OF UTAH et al.

No. 5267. Decided December 30, 1932. (17 P. [2d] 261.)

*C. A. Robertson,* of Moab, for plaintiff.

*F. B. Hammond,* of Monticello, for defendants.

BATES, District Judge.

This is an original proceeding in which the plaintiffs are seeking to restrain and enjoin the defendant district court from authorizing the defendant Hanson, as special adminis-

trator, to pay to one Kathryne C. Kidman money out of the estate of John Phillip Byrne to be used by her for her support and maintenance and as suit money and for counsel fees to assist her in establishing that she is the surviving widow of the deceased, and as such entitled to participate in the distribution of his estate.

The following facts are alleged in the petition:

(a) That John Phillip Byrne died July 22, 1931, and that he was a resident of San Juan county, Utah, in which county he left an estate having a value of more than $15,000.

(b) That the deceased left a will dated October 14, 1929; that the plaintiffs in this action are named in said will as the executors thereof; and that they have filed a petition in the district court of San Juan county, for the admission of said will to probate and for their appointment as executors.

(c) That on the 10th day of February, 1930, a marriage ceremony was performed between the deceased, John Phillip Byrne, and Kathryne C. Kidman, and that thereafter no will nor other provision was made by Byrne whereby Kathryne C. Kidman would be permitted to share in the estate.

(d) That after the performance of said marriage ceremony, the parties thereto cohabited together as husband and wife until his death.

(e) That on the 10th day of September, 1931, upon petition and without notice to the plaintiffs or to the heirs of the estate of John Phillip Byrne, Hon. George Christensen, one of the judges of the Seventh judicial district, appointed the defendant herein H. Lloyd Hanson as special administrator of said estate, and directed him to pay out of said estate to Kathryne C. Kidman, as her allowance as surviving widow of the deceased, $60 per month, until further order, and that said Hanson is now qualified and acting as such special administrator of said estate.

(f) That on the 10th of November, 1931, these plaintiffs filed and presented to Hon. Dilworth Woolley, a judge of

the Seventh judicial district, a protest and application for an order restraining the said special administrator from expending any of the funds of said estate until the validity of the last will and testiment of said John Phillip Byrne, and his legal heirs are determined, but that said application was denied, and an order made by said judge directing the said special administrator to pay to Kathryne C. Kidman for counsel fees and suit money, the sum of $250 and the further sum of $60 a month during the pendency of the suit; that none of said payments have been made.

(g) That in the petition to admit the will to probate and for the appointment of these plaintiffs as executors thereof filed in the district court of San Juan county, on the 9th day of November, 1931, it was alleged that the defendant entered into a purported marriage with Kathryne C. Kidman, but that the said will was not revoked for the reason that said marriage was null and void and of no effect ab initio, in that the said Kathryne C. Kidman at the time of said purported marriage was of the age of 27 years and for several years prior thereto and ever since has been subject to chronic epileptic fits, and that she was on the date of said purported marriage afflicted with syphilis, then uncured; that in the petition asking that the special administrator be restrained from expending the funds of the estate, it is also alleged that the marriage was void ab initio for said reasons.

(h) That on the 3d day of December, 1931, said Kathryne C. Kidman filed in said court her protest before probate of will, but that she wholly failed to challenge or deny the affirmative allegations of her incompetency to enter into a valid marriage, and that there is no pleading on file in said district court denying said allegations.

(i) That unless restrained by the court, said special administrator will carry out the orders of the district court, and that if said payments are made, neither the special administrator nor his bondsmen will be liable therefor, and if it shall be finally determined that said marriage was void

ab initio, then said Kathryne C. Kidman will have no interest in said estate, and the money paid by the special administrator will be wholly lost in the estate, to its irreparable damage and injury; that plaintiffs have no plain, speedy, and adequate remedy in the ordinary course of law.

Other facts are alleged, but in the view we take, they are immaterial to a determination of those issues.

To the petition and affidavit filed herein, the defendants have demurred on the ground that the said affidavit and petition does not state facts sufficient to justify the issuance of a peremptory writ of prohibition.

The following sections of our statute (Comp. Laws Utah 1917) are material to a determination of the questions involved in this action:

Sec. 6334. "Effect upon will of subsequent marriage. 1. If, after having made a will, the testator marries, and has issue of such marriage, born either in his lifetime or after his death, and the wife or issue survive him, the will is revoked, unless provision is made for such issue by some settlement, or unless such issue are provided for in the will, or in such way mentioned therein as to show an intention not to make such provision; and no other evidence to rebut the presumption of such revocation can be received.

"2. If, after making a will, the testator marries, and the wife survives the testator, the will is revoked, unless provision has been made for her either by marriage contract, or by some written settlement showing on its face the testator's intention to substitute such contract or settlement for a provision in her favor in his will, or unless she is provided for in the will, or in any such way mentioned therein as to show an intention not to make such provision; and no other evidence to rebut the presumption of revocation must be received."

Sec. 2967. "Other void marriages. Marriages prohibited and declared void:

"1. With an idiot, lunatic, or person afflicted with syphilis or gonorrhea, that is uncured, or a person subject to chronic epileptic fits; provided, that the last qualification shall not apply to a female over the age of forty-five years;

"2. When there is a husband or wife living from whom the person marrying has not been divorced;

"3. When not solemnized by an authorized person, except as provided in § 2970;

"4. When, at the time of marriage, the male is under sixteen or the female is under fourteen years of age;

"5. Between a negro and a white person;

"6. Between a Mongolian and a white person;

"7. Between a divorced person and any person other than the husband or wife from whom the divorce was secured, within the period allowed for an appeal, and, if an appeal is taken, until after the affirmation of the decree of divorce."

In *Sanders* v. *Industrial Commission,* 64 Utah 372, 230 P. 1026, 1027, section 2967 was construed with reference to subdivision 7. In that case Ruby Clark Sanders was denied compensation which she claimed to be entitled to as the widow of O. R. Sanders, who had been killed in an accident arising in the course of his employment. The record showed that she had been divorced from one Sam Saris, April 25, 1923, in Utah, and that she married Sanders at Evanston, Wyo., June 16, 1923. This court, after pointing out that a decree of divorce does not become absolute for six months after its entry, and that any marriage contracted by a party to a divorce proceeding within the time allotted for an appeal from such final decree shall be null and void, says:

"The marriage was a nullity from its inception, was void ab initio, and that was simply a fact which had been presented to the Industrial Commission, which could not possibly validate the marriage or in any way affect it. No other decree of court nor finding of any other body was needed to determine that the  *  *  *  marriage ceremony was a nullity and could not be recognized as having any legal status in Utah. Such a marriage could not be ratified or validated in Utah, as claimed by plaintiff. Holding each other out as husband and wife, believing in good faith that they were legally married—all these things are of no avail in this state, where common-law marriages are not valid, and where marriages to be valid must be solemnized as by statute provided."

Every reason that exists for holding void a marriage performed in violation of the provisions of subsection 7 of the statute applies with equal force to a marriage entered into in violation of the provisions of subdivision 1. As a matter of fact, there is no necessity for a construction of either of

the provisions of the statute. The language is plain. If a woman under the age of 45 is subject to chronic epileptic fits, any marriage covenant she may enter into is void. The same is true of a marriage covenant entered into by a person afflicted with syphilis. There is no language in the act from which it may be inferred that if the parties cohabit together in good faith, believing that they are husband and wife, or if they both hold each other out as husband and wife fully relying on the marriage as being valid, that the effect of the statute should be modified. Such construction would defeat the purpose of the enactment which expresses a policy of this state to prevent the marriage of and the rearing of children by such people as may pass on to succeeding generations the afflictions aimed at by the statute. We think it clear that if Kathryne C. Kidman was in fact suffering with either of the maladies named in the statute and alleged in the pleadings' before the court when the orders complained of were made, that she was not the wife of the deceased during his lifetime nor his widow after death. Unless she is in fact the surviving widow of the deceased, it is not her right to participate in the distribution of the estate. Counsel for the defendant argue that the demurrer to the petition should be sustained because marriage once shown is presumed legal until legally disproved; because the widow is morally entitled to her allowance and attorneys' fees; because she is legally entitled to her allowance and attorneys' fees until the marriage is judicially decleared invalid.

In *Hilton* v. *Roylance,* a Utah case reported in 25 Utah 129, 69 P. 660, 663, 58 L. R. A. 723, 95 Am. St. Rep. 821, the rule is laid down that where a man and woman are living together as husband and wife, the law will presume them to be married even against strong possibilities that they are not, or where a ceremony of marriage is shown, there will be the like presumption that it is valid unless some distinct or special fact clearly appears in the particular case to the contrary. Other cases are cited by counsel

for the defendants tending to establish that where actions are brought by a husband in his lifetime for the annulment of marriage, he should be required on application being made to assist the defendant in the preparation and presentation of her case by furnishing suit money and attorneys' fees, as in cases of divorce. But none of the cases cited are authority for the rule contended for in this case by the defendants.

Here we have a case in which it appears from the undenied pleadings which were before the court at the time the order for such payments was made, that the woman to the marriage covenant upon which defendants rely was suffering from those afflictions, which make the covenant void. As in the Sanders Case, the record establishes the invalidity of the marriage. No judicial finding or decree could make the fact more plain. It is not enough to say that the performance of a marriage ceremony being admitted that its legality is presumed and that every intendment must be indulged in its favor. The office of a presumption is not to overthrow admitted facts. Where there is no pleading upon which to base a finding of fact, there is no occasion to indulge presumptions as to the existence of facts. The record before the district court established the performance of a marriage ceremony prohibited by law and void. The allegations being undenied, there was no occasion for proof, and therefore no place for the indulgence of the presumption.

The authorities quite generally teach that where a man seeks the annulment of a marriage ceremony, under which he has sustained the relation of husband and wife with a woman, that the burden is upon him to establish the invalidity of the marriage, and many authorities adhere to the rule that the burden is also upon him to furnish the woman with whom he has so lived the means of support and defense necessary to protect her rights. But we think it would be carrying the rule too far to permit a woman to profit by such allowances from the estate of her claimed

husband, where, as in this case, there are allegations undenied, which if true, make her marriage a total nullity and void. To justify such allowances there should be before the court such a record as would establish at least a probability of her succeeding in the final dispostion of the case.

Had the allegations of her unfitness to enter into the marriage covenant been untrue, it would have been a simple matter to have denied them and to have supported such denials with some preliminary evidence tending to establish her physical condition. Counsel have actively assisted her in the filing of many papers and in earnest legal discussion, but for some reason a little difficult to understand, they evaded the crucial point of formally denying those allegations which, if true, wholly defeat either their or her right to allowances out of the estate of the deceased. Under such conditions we do not think it a sufficient answer to say that they are entitled to allowances as a condition precedent to their being required to answer.

Plaintiffs contend that under the law as laid down in *Farnham* v. *Farnham*, 227 N. Y. 155, 124 N. E. 894, Kathryne Byrne would not have been entitled to an allowance in any event for the reason that alimony and counsel fees can be allowed only during coverture and that the right ceases with death. But the allowance for the support of the claimed widow was not made by the district court in the nature of alimony. It was made in the administration of the estate under the statute providing for family support. If it should be finally established that the parties were in fact husband and wife, then it necessarily follows that the allowance is proper.

But the allowance for attorney's fees and suit money must rest on a different basis. As pointed out in the Farnham Case, the right to suit money and counsel fees in actions affecting the marriage relations cease with death. The rights of the parties after the death of one spouse depend upon the law applicable to the administration of estates. Neither statute nor decisions have been called to

the attention of the court. and the writer has been unable to discover any, providing that where a person is attempting to establish his or her right to participate in the distribution of an estate, that the sinews of war should be furnished by or from the estate. In the Farnham Case, it is clearly pointed out that where such a contest as this is before the court, the opposing parties are not obligated to furnish suit money nor counsel fees to the woman who is attempting to establish her marital status. In like manner the estate should be protected from being depleted.

No question is raised as to the right of the court to issue a writ of prohibtion under the facts of this case. We therefore refrain from considering it.

It is therefore ordered that the temporary writ heretofore issued be made permanent upon the record as it now stands.

STRAUP, ELIAS HANSEN, FOLLAND, and EPHRAIM HANSON, JJ., concur.

CHERRY, C. J., did not participate herein.